UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JERALD REY COSTA, JR.,

                        Petitioner,

    v.

JOHN HENLEY,[1] *et al*.,

                     Respondents.

Case No. 3:16-cv-00705-HDM-CLB

ORDER

       Before the court for a decision on the merits is a petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 14) filed by Jerald Rey Costa, Jr., a Nevada prisoner. For the reasons discussed below, this court denies the petition.

**I.    BACKGROUND**

       In August 2010, Costa was charged with murder with use of a firearm based on an allegation that, in May 2010, he shot Anthony Pulice with a handgun in a bar in Sparks, Nevada. Costa was subsequently charged with battery by a prisoner for allegedly striking and biting another inmate after learning that Pulice had died from his wounds. In July 2011, Costa entered negotiated guilty pleas to first-degree murder and the battery in the Second Judicial District for Nevada (Washoe County). Judgments of conviction were entered in August 2011, sentencing him to life with the possibility of

---

[1] John Henley, the current warden of Northern Nevada Correctional Center, is substituted for Isidro Baca as the primary respondent in this case. *See* Fed. R. Civ. P. 25(d).

parole after 20 years for the murder and a consecutive term of 2 to 6 years for the battery. Costa appealed. In May 2012, the Nevada Supreme Court affirmed the judgments.

In January 2014, Costa filed a counseled supplemental state petition for writ of habeas corpus, seeking post-conviction relief. After holding an evidentiary hearing, the state district court held denied the petition. Costa appealed. In November 2016, the Nevada Supreme Court affirmed the denial of Costa's petition.

In late 2016, Costa submitted his original federal habeas petition. This Court stayed this matter while Costa sought relief in state court. During the stay, Costa filed a pro per state habeas petition, a motion to vacate his judgment of conviction, a motion for a new sentencing hearing, and a motion to reconsider sentence, all of which were denied.

In May 2022, this court reopened this case at Costa's request and, soon thereafter, Costa filed an amended petition. This court subsequently granted, in part, respondents' motion to dismiss and dismissed Ground 1 from the amended petition. The court now addresses Costa's remaining claims.

## II.    STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). The standard of review under AEDPA is set forth at 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite than that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Emil v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not" issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not

merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

## III.    DISCUSSION

### *Ineffective assistance of counsel claims*

Except for Ground 4, all of Costa's remaining claims allege that he was deprived of effective assistance of counsel in violation of his constitutional rights. The right to counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). In *Strickland*, the U.S. Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case; and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 690, 694. When an ineffective assistance of counsel claim bears on a defendant's decision to enter a guilty plea, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (citations omitted). The reviewing court need not consider the performance component before the prejudice component "or even address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697.

Ground 2(1)

In Ground 2(1), Costa alleges that he was deprived of effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendment because

his counsel, Jennifer Lunt, failed to investigate whether he lacked the requisite intent to

commit first-degree murder. According to Costa, he was experiencing an alcoholic

blackout at the time of the shooting. He further alleges that, in addition to the alcoholic

blackout, he had not been taking his medication for other mental health conditions.

The Nevada Supreme Court addressed the claim raised in Ground 2(1) as

follows:

> Costa argues that trial counsel failed to advise him that he had a
> viable defense based on voluntary intoxication. Counsel testified that a
> percipient witness reported that the victim was nearly passed out on a bar
> when Costa stood up, announced that he was going to shoot the victim,
> and then shot the victim four times. Counsel further testified that Costa's
> actions after the shooting suggested that voluntary intoxication would not
> have been a viable defense. The district court found counsel's testimony
> to be credible and correctly concluded that the events described
> demonstrated the intent necessary for first-degree murder. *See Byford v.*
> *State*, 116 Nev. 215, 237, 994 P.2d 700, 714 (2000) ("Premeditation . . .
> may be as instantaneous as successive thoughts of the mind."). Based on
> those findings and conclusions, Costa failed to show deficient
> performance or prejudice. The district court therefore did not err in denying
> this claim.

ECF No. 20-47 at 3-4.

Costa has failed to demonstrate that this decision was based on an

unreasonable application of Supreme Court precedents or on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding. The court's findings of fact are supported by Lunt's testimony at the

evidentiary hearing on Costa's state habeas petition. *See* ECF No. 20-26 at 9-12. Lunt

testified that she talked to witnesses at the scene including Costa and Pulice's

roommate, who provided the account related in the court's opinion. *Id*. at 12. Lunt also

testified that she "had Dr. Anderson who worked at the Washoe County Crime Lab

extrapolate back the blood alcohol based upon what it was when [Costa] was booked

and what it would have been at the time of the shooting." *Id* at 9. According to her

testimony, the results of that testing combined with Costa's actions after the shooting

led her to conclude that his impairment due to alcohol would not be "a viable defense." *Id*.

The Nevada Supreme Court correctly applied the *Strickland*/*Hill* standard to the claim. *Id*. at 2. This court must defer to the state supreme court's decision because it was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Thus, Ground 2(1) is denied.

Ground 2(2)

In Ground 2(2), Costa alleges that he was deprived of effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendment because Lunt failed to investigate whether Pulice had pulled a knife on him before he shot Pulice. Costa claims that he told the police at the time of his arrest, and later Lunt, that he believed Pulice had brandished a knife. He also claims that Pulice's friend was alone with the body before the police arrived, implying that the friend may have taken the knife.

It does not appear that Costa presented this claim to the Nevada Supreme Court when he appealed the district court's denial of post-conviction relief. *See* ECF No. 20-43. Thus, the claim is arguably unexhausted. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that a habeas petitioner must present his claim "to each appropriate state court (including a state supreme court with powers of discretionary review)" to meet the exhaustion requirement). Even so, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) ("[A] federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim."). As explained below, Ground 2(2) is not a colorable federal claim.

Lunt testified that Costa maintained "almost from the beginning that Mr. Pulice had a knife and had come at him with that." ECF No. 20-26 at 12. However, according to her testimony, she talked to witnesses at the scene but was unable to develop any evidence to prove that a knife existed. *Id*. As mentioned above, the roommate told her that Pulice was "kind of passed out on the bar" when Costa shot him. *Id*. In addition, no knife was taken into evidence by the police, and, while Pulice was known to carry a knife, the roommate said that Pulice's knife had gone missing a week or so before the shooting. *Id*. at 13.

"The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (citing *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir.2002)). Here, Costa has not presented any evidence in the state court or in this court that Pulice threatened him with a knife prior to the shooting. Accordingly, his claim that his counsel provided ineffective assistance of counsel by failing to investigate the matter is wholly unsubstantiated. Thus, Ground 2(2) is denied as plainly meritless under 28 U.S.C. § 2254(b)(2).

Ground 2(4)[2]

In Ground 2(4), Costa alleges that he was deprived of effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendment because his counsel "took advantage of [his] mental health illness and coerced him into pleading guilty to a charge he was not capable of possessing the requisite intent to commit." ECF No. 14 at 6. He claims that Lunt told him that making amends for the crime would benefit his mental health and that he would receive the death penalty if he did not plead guilty.

---

[2] Rather than constitute identifiable ineffective assistance of counsel (IAC) claims, Costa's allegations labeled Ground 2(3) and Ground 3 merely supplement the grounds for relief discussed in this order. Thus, those allegations are not addressed herein as separate claims.

7

1
2

The Nevada Supreme Court addressed the claim raised in Ground 2(4) as

follows:

3
4
5
6
7

> Costa argues that counsel coerced him into pleading guilty by
> telling him that he could face the death penalty. Trial counsel testified,
> however, that she and Costa never discussed the death penalty. The
> district court found that trial counsel was credible and that Costa's
> testimony was not credible. We will not second-guess those credibility
> determinations. *State v. Rincon*, 122 Nev. 1170, 1177, 147 P.3d 233, 238
> (2006). Costa failed to show deficient performance. The district court
> therefore did not err in denying this claim.

ECF No. 20-47 at 3.

8
9
10
11
12
13
14
15
16
17
18
19

Costa has failed to demonstrate that this decision was based on an

unreasonable application of Supreme Court precedents or on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding. Lunt testified that, by the time she took over the case, the statutory period

for the State to seek the death penalty had elapsed so she instead focused her

discussions with Costa on the possibility that he could be sentenced to life in prison

without the possibility of parole. *See* ECF No. 20-26 at 11. She further testified that she

never told Costa that he was subject to the death penalty and that she would have told

him that it was "not even on the table" if he had brought it up. *Id*. at 19. By pleading

guilty, Costa received the earliest possible parole eligibility for first-degree murder. *See*

Nev. Rev. Stat. § 200.030. In addition, the State agreed to not seek a mandatory

consecutive enhancement term for use of a deadly weapon. ECF No. 19-18 at 4.

20
21
22
23
24
25
26
27

Here again, the Nevada Supreme Court correctly applied the *Strickland/Hill*

standard to the claim. *Id*. at 2. Given Lunt's testimony and the significant benefit Costa

received in exchange for his guilty plea, the record does not support a finding that

counsel improperly coerced him into pleading guilty or that, but for counsel's alleged

improper conduct, Costa would have insisted on going to trial. Thus, this court must

defer to the state supreme court's decision because it was not "so lacking in justification

that there was an error well understood and comprehended in existing law beyond any

28

8

possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Thus, Ground 2(4) is denied.

Ground 2(5)

In Ground 2(5), Costa alleges that he was deprived of effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendment because his counsel failed to have him independently evaluated to determine whether he had "the requisite state of mind to commit the crime charged, or to determine whether he had the requisite state of mind to plead guilty to such." ECF No. 14 at 6. Other than referring vaguely in his petition to his mental health issues and being prescribed psychotropic medication, Costa does not elaborate on this claim.

The Nevada Supreme Court addressed Costa's competency at the time of his guilty claim as follows:

> Costa argues that counsel failed to inform the district court that Costa was abused as a child and suffered from several mental illnesses, so that the district court could fully evaluate his competency. At the evidentiary hearing, Costa presented no evidence that he was incompetent to enter his guilty plea. Rather, Costa's responses during his guilty plea colloquy as well as counsel's testimony regarding her interactions with Costa and the results of two competency evaluations support the district court's finding that Costa understood the charges against him and was an active participant in his defense, indicating that Costa was competent to enter his plea. *See Calvin v. State*, 122 Nev. 1178, 1182–83, 147 P.3d 1097, 1100 (2006) (setting forth the competency standard). Accordingly, Costa failed to show deficient performance or prejudice. The district court therefore did not err in denying this claim.

ECF No. 20-47 at 3.

According to Lunt's testimony at the state post-conviction hearing, an evaluation conducted before she took the case over from Costa's prior counsel resulted in a finding that Costa was competent at the time of the evaluation. ECF No. 20-26 at 8, 17. After Costa entered his guilty plea, Lunt had him evaluated again for the purpose of developing mitigation evidence. *Id*. at 17. She testified that she chose not to present the results of that evaluation at sentencing because "[i]t was not at all favorable." *Id*.

"At or before trial, the test to be applied in determining competency must be whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Means v. State*, 103 P.3d 25, 35 (Nev. 2004) (alterations and internal quotation marks removed). With respect to competency at the time of the crime, "a defendant must be in a delusional state preventing him from knowing or understanding the nature of his act or from appreciating the wrongfulness of his act." *Blake v. State*, 121 P.3d 567, 576 (Nev. 2005); *see also* NRS 174.035(5) (codifying Nevada's standard for legal insanity). In the absence of any evidence that he came remotely close to satisfying either of these standards, Costa has not demonstrated that his counsel was ineffective by not having him individually evaluated prior to the entry of his guilty plea. Ground 2(5) is denied.

Grounds 2(6), 2(7), and 2(8).

Costa raises three additional claims in Ground 2, all of which fail to meet the pleading standard applicable to federal habeas claims. Habeas Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts imposes a "more demanding" pleading standard than the notice pleading used for complaints in ordinary civil cases. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). Under Habeas Rule 2(c), a petition must "specify all the grounds for relief available to the petitioner [and] state the facts supporting each ground[; ... and] the petition is expected to state facts that point to a real possibility of constitutional error." *Id*.

In Ground 2(6), Costa alleges that counsel was ineffective because she advised him that if he pleaded guilty the prosecution would not seek the weapon enhancement. In Ground 2(7), he alleges the counsel was ineffective for failing to argue for a fixed sentence. In Ground 2(8), he alleges that counsel was ineffective for failing "to bring meritorious claims for review on direct appeal, when such claims existed." ECF No. 14

1    at 6. Costa does not provide any additional factual allegations to support these bald

2    claims. As such, they must be dismissed under Habeas Rule 2(c).[3]

3        *Prosecutorial misconduct claim*

4                                            Ground 4

5        In Ground 4, Costa alleges that the prosecutor's statements and conduct at his

6    sentencing hearing constituted a breach of the plea agreement. He contends that the

7    prosecutor had agreed to "stand silent" about the sentence to be imposed under the

8    agreement. ECF No. 14 at 10. He claims that the prosecutor's failure to do so caused

9    the trial judge to depart upwards from the agreed upon sentence.

10        On direct appeal, the Nevada Supreme Court addressed this claim as follows:

11            Appellant Jerald Rey Costa, Jr., contends that the State breached
12        his plea agreement because the prosecutor went beyond simply asking
         the district court to follow the negotiations. We disagree. The State
13        specifically reserved the right to present arguments in support of its
         recommendation of life with the possibility of parole for the first-degree
14        murder conviction and a concurrent sentence for the battery by a prisoner
         conviction. Nothing in the prosecutor's comments implicitly or explicitly
15        sought a harsher sentence than the State agreed to recommend.
         Therefore, we conclude that the prosecutor did not breach the terms or
16        spirit of the plea agreements, *see Sullivan v. State*, 115 Nev. 383, 389-90,
         990 P.2d 1258, 1261-62 (1999).

17    ECF No. 19-49 at 2-3.

18        "When a plea rests in any significant degree on a promise or agreement of the

19    prosecutor, so that it can be said to be part of the inducement or consideration, such

20    promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). In

21    *Santobello*, the prosecutor recommended a particular sentence even though the State

22    had promised petitioner before the plea was entered that there would be no sentence

23    recommendation by the prosecution. 404 U.S. at 259. The U.S. Supreme Court vacated

24    Santobello's judgment of conviction even though the sentencing judge said he would

25    have imposed the same sentence notwithstanding any breach of the plea agreement.

26    _____

27    [3] Ground 2(6) is meritless on its face because, as noted above, the prosecution agreed not to
      seek the enhancement.

28

1    *Id.* at 259-20. In addition, the Court held that it does not matter whether the breach is

2    inadvertent. *Id*. at 263.

3        In exchange for Costa's guilty plea, the State agreed to not pursue the

4    sentencing option of life without the possibility of parole or a mandatory consecutive

5    sentence for use of a deadly weapon. ECF No. 19-18 at 4.  The State also agreed to

6    recommend that Costa's sentence on the battery by a prisoner count run concurrent to

7    the sentence in his murder case. ECF No. 19-19 at 4

8        At Costa's sentencing hearing, Lunt argued at length about mitigating

9    circumstances, including physical and sexual abuse Costa had witnessed as a child,

10   and asked the court to follow the negotiated agreement and not the recommendation of

11   the Department of Parole and Probation, which was that Costa be sentenced to life

12   without the possibility of parole for the murder and the maximum term for the battery by

13   a prisoner. ECF No. 19-21 at 18-39. At the outset of his argument, the prosecutor stated

14   that the State is in "complete agreement with the plea agreement." *Id*. at 41. However,

15   he then argued that, while Costa was an alcoholic, the real issue in the case was

16   "impulse control" and that Costa had been arrested before for having a gun while

17   intoxicated. *Id*. at 41-42. Lunt objected on the ground that the prosecutor was "getting

18   close to going beyond" following agreement. *Id*. at 42. The prosecutor denied that he

19   was "arguing anything," and the judge overruled the objection. *Id.*

20       The prosecutor then questioned Lunt's argument about the abuse Costa had

21   witnessed because, despite being asked, Costa had not mentioned it to the person who

22   had compiled the presentence investigation report. *Id*. at 42-43. The prosecutor also

23   noted that, despite Costa having a blood-alcohol level of .17 at the time of his arrest, he

24   "wasn't too drunk to run away" and that he appeared to have hid the gun he used to

25   shoot Pulice. *Id*. at 43. At that point, Lunt again objected on the ground that the

26   prosecutor was going beyond following the negotiations. *Id*. at 43-44. She also pointed

27

28

1  out that gun had been found lying on its side, not hidden, and that Costa had said that

2  he lost it while running. *Id*. at 44.

3      The judge noted that Lunt's claim regarding the gun was supported by the

4  presentence investigation report and admonished the prosecutor to confine his

5  comments to the negotiation. *Id*. The prosecutor responded by denying that he had said

6  anything wrong. *Id*. The judge then explained that defense counsel's concern was that

7  he was arguing aggravating factors by asserting that the murder was premeditated, that

8  Costa had hid the weapon, and that Costa was not that drunk. *Id*. at 44-45. The

9  prosecutor then discussed the battery case and asked that Costa receive a 24 to 60-

10 month term (less than the maximum) to run concurrent with the sentence on the murder

11 charge. *Id*. at 45-46.

12     The judge followed the negotiation with respect to the murder charge and

13 imposed a sentence of life with the possibility of parole after 20 years has been served.

14 *Id* at 62-66. The judge then sentenced Costa to a maximum term of 24 to 72 months on

15 the battery charge to run consecutive to the sentence on the murder charge. *Id*. at 66.

16     The Nevada Supreme Court's decision to deny relief was not an "unreasonable

17 application" of Supreme Court precedents, 28 U.S.C. § 2254(d)(1), nor an

18 "unreasonable determination of the facts" based on the trial court record, *id*.

19 § 2254(d)(2). The case the Nevada Supreme Court cited to support its analysis was a

20 case in which it had cited *Santobello* and correctly identified the governing federal law

21 standard. *See Sullivan*, 990 P.2d at 1260-62. It matters not whether this court considers

22 the state court's decision under § 2254(d)(1) or § 2254(d)(2) because the same "clearly

23 erroneous" standard is used for both determinations. *See Gunn v. Ignacio*, 263 F.3d

24 965, 969 (9th Cir. 2001). Based on the record before this court, the state court's

25 adjudication did not result in a decision that meets that standard.

26

27

28

1    Despite Costa's allegation to the contrary, the prosecutor did not agree to "stand

2  silent" about the sentence to be imposed. Instead, Costa's guilty plea memorandum

3  included the following provision:

4        I understand that, even though the State and I have reached this
       plea agreement, the State is reserving the right to present arguments,
5        facts, and/or witnesses at sentencing in support of the plea agreement.

6  ECF No. 19-18 at 4. It is not unreasonable to conclude that the prosecutor was merely

7  attempting to demonstrate why the first-degree murder charge was warranted and why

8  a 20-year to life sentence was the appropriate punishment as opposed to a 20 to 50-

9  year sentence, the other available sentencing option in addition to life without the

10  possibility of parole. The state court's decision was objectively reasonable, and this

11  court must defer to that decision under § 2254(d). Ground 4 is denied.

12  **IV.    CONCLUSION**

13    For the reasons set forth above, Costa is not entitled to habeas relief.

14                                *Certificate of Appealability*

15    Because this is a final order adverse to the petitioner, Rule 11 of the Rules

16  Governing Section 2254 Cases requires this court to issue or deny a certificate of

17  appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within

18  the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v.*

19  *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

20    Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner

21  "has made a substantial showing of the denial of a constitutional right." With respect to

22  claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists

23  would find the district court's assessment of the constitutional claims debatable or

24  wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463

25  U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable

26  jurists could debate (1) whether the petition states a valid claim of the denial of a

27  constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

28

Having reviewed its determinations and rulings in adjudicating Costa's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of Costa's claims.

**IT IS THEREFORE ORDERED** that Costa's amended petition for writ of habeas corpus (ECF No. 14) is DENIED. The Clerk shall enter judgment accordingly and close this case.

**IT IS FURTHER ORDERED** that a COA is DENIED.

DATED this 28th day of May, 2025.

_____
UNITED STATES DISTRICT JUDGE